SEALED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., a Delaware Corporation, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **UNDER SEAL** |
| | ) | |
| The Individuals and Entities associated with the domains and email addresses identified in **Exhibit A.** | ) | Case No. _____ |
| | ) | |
| *Defendants.* | ) | FILED BY_____ D.C. |
| | ) | |
| | ) | JUL 0 8 2022 |
| | ) | ANGELA E. NOBLE |
| | ) | CLERK U.S. DIST. CT. |
| | | S. D. OF FLA. - MIAMI |

## COMPLAINT

Plaintiff American Airlines, Inc. ("American"), by its attorneys, bring this action to enjoin Defendants' fraudulent activity and infringement of American's trademarks and copyrights. It is well established that the airline industry suffered numerous setbacks during the COVID 19 pandemic as have those who typically work for the airlines. As the industry recovers, and as Americans are attempting to return to work, one of the most critical challenges continues to be the recruiting and hiring of employees to carry out the many critical support functions that enable the airline industry to serve the public. Anything that interferes with the recruiting and hiring of employees by airlines results in significant harm to jobseekers, the travelling public, and the airlines. Scammers have taken full advantage of this this industry challenge. This complaint addresses this new threat to job seekers, the travelling public, and the airline industry.

Scammers are cheating jobseekers by pretending to be American Airlines. The scammers use fraudulent email messages to trick jobseekers in the United States into believing they are being

1

invited to work at American. The scammers tell the unsuspecting jobseekers they need to attend a New Hire Orientation, which does not actually exist. The scammers demand the jobseekers provide personal information via a fraudulent New Hire Form prior to attending this nonexistent New Hire Orientation. The scammers also insist the jobseekers pay for a (fake) Criminal Background Check before attending the nonexistent New Hire Orientation. Victims of this scam end up paying for a nonexistent background check *and* turning over sensitive personal information. In some cases, the jobseekers show up to the nonexistent New Hire Orientation before realizing they have been scammed. While this scam affects all jobseekers, this has a disproportionate impact on those in historically under-represented communities.

American seeks preliminary and permanent injunctive relief and all other remedies available under the laws of the United States and the State of Florida and alleges as follows:

## NATURE OF ACTION

1.      This is an action for trademark infringement and counterfeiting, cyberpiracy, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051, et seq.; for copyright infringement under 17 U.S.C. § 501; for false advertising in violation of the Florida Deceptive and Unfair Trade Practices Act; and for civil conspiracy under Florida law.

## THE PARTIES

2.      Plaintiff American Airlines, Inc., ("American") is a Delaware corporation with a principal place of business at 1 Skyview Drive, Fort Worth, Texas, 76155.

3.      American owns and operates the domain name <aa.com> which it has used to host its primary website since 1998. American also owns and operates many other domain names including <American.com> which redirect to its website at <aa.com>.

4.      On information and belief, Defendants are as-of-yet-unidentified individuals and/or

entities (the "Doe Defendants" or "the Defendants") who hold themselves out as "George Wilson" or "Peter Harrington," the "Recruitment Director" for American Airlines in the city where the job seeker is searching for a position.

5.      On information and belief, the Doe Defendants own and operate email addresses that use domain names that are similar to or incorporate American's well known "American Airlines" and "AA" marks and include george.wilson@flydiraa.com, george.wilson@directaase.com, george.wilson@aadirectee.com, george.wilson@aadirecthh.com, george.wilson@amairll.com, george.wilson@OneWorldAA.com, george.wilson@flyaaow.com, george.wilson@aaflydirect.com, george.wilson@skyaadi.com, peter.harrington@airdiroi.com, peter.harrington@flydirectaa.com,                          peter.harrington@directaaci.com, peter.harrington@oneworldaae.com,              peter.harrington@oneaadire.com,              and peter.harrington@onedirectaae.com. The email messages direct victims to access a "New Hire Form" at another domain name that incorporates or is similar to American's "AA" mark, including aaflydd.com and aaapplyhh.com. The domain names redirect the jobseekers to online forms hosted at third party websites, which collect the jobseekers' personal information and direct the jobseekers to make payments to the Defendants' payment account for a fake background screening. The Defendants also send text messages using SMS short codes[1] to the jobseekers purporting to be from American Airlines and include fake phone numbers in the fraudulent email messages to the jobseekers. In addition, several of these domains are registered to a Miami Beach address.

6.      On information and belief, the Doe Defendants own and/or operate the domain names, email addresses, online forms, phone numbers, SMS short codes, and payment accounts at issue in this case.

---

[1] An SMS short code, is an shortened phone number that is 5 or 6 digits in length that can be used to send and receive text messages. Short codes are usually used to send large numbers of text messages as part of marketing campaigns.

3

7.      On information and belief, the Doe Defendants are foreign individuals and/or entities who do not reside in the United States. Particularly, it has been American's experience over the past several years that most online fraud schemes targeting its customers and jobseekers originate in foreign countries.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a) and (b), because the claims address federal questions concerning federal copyright infringement under 17 U.S.C. § 501 and violations of the Lanham Act, including trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, cyberpiracy under 15 U.S.C. § 1125(d), federal unfair competition under 15 U.S.C. § 1125(a), and federal trademark dilution under 15 U.S.C. § 1125(c).

9.      This Court has jurisdiction over the claims in this action that arise under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

10.      This Court has personal jurisdiction over Defendants because American's claims for trademark infringement and counterfeiting, cyberpiracy, unfair competition, and dilution arise from acts conducted and harm sustained in a number of states including Florida.  Defendants directly target consumers in the United States, including in Florida. Specifically, Defendants reach out to Florida residents by sending email messages bearing counterfeit imitations of American's trademarks providing links through which Florida residents can submit a job application on interactive website forms and payment through the PayPal platform. Each of the Defendants is committing tortious acts directed at a number of states including Florida, is engaging in interstate

4

commerce, and has wrongfully caused Plaintiffs substantial harm in a number of states including Florida.

11.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to this claim occurred in this district. Particularly, Defendants' scheme to defraud job seekers is centered on their ability to create fraudulent websites and domain names. Further, Defendants are targeting job seekers nationwide, including job seekers in this district.

12.     Alternatively, venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(3). The fraud carried out by the Defendants in this matter is similar to other well-known, pervasive fraudulent conduct carried out by individuals based in foreign countries. As alleged above, the Doe Defendants are all likely based in a foreign country. Accordingly, there is no judicial district in which this action can otherwise be brought for purposes of venue.

## FACTUAL BACKGROUND

## AMERICAN AIRLINES' VALUABLE RIGHTS

13.     American is the largest air carrier in the world and enjoys a reputation in the United States and internationally as a premier airline for business and leisure travelers. American and its affiliates serve hundreds of destinations in dozens of countries, with thousands of daily flights. At the end 2021, American employed around 130,000 people worldwide. These employees include tens of thousands of customer service representatives, gate agents, baggage handlers, ticket agents, mechanics and other operations employees. By 2019, American had become the third-largest private employer in Miami-Dade County with more than 13,500 team members and an annual payroll exceeding $1.8 billion.

14.     Over the past 18 months, American has invested heavily in recruiting new

5

employees, both worldwide and in southern Florida. This includes holding job fairs, both at colleges and high schools, and includes developing programs to help students pay for school in preparation for a job at American. Miami is one of American's primary hubs and is considered by many to be the gateway to Latin America, via American flights. These jobs are critical to American's ability to provide on-time operations, while at the same time providing valuable employment, pay and benefits to thousands of employees in southern Florida. American currently has hundreds of open positions in southern Florida.

15.     During its more than 90-year history, American has developed global name-recognition and goodwill and has become a household name. A significant component of American's success has been its investment in its brand and intellectual property. For decades, it has used and continues to use the trade name "American Airlines" and numerous trademarks and service marks such as AA, AMERICAN AIRLINES, and the "Flight Symbol," both alone and in connection with other words and designs (the "American Marks"). American's brands, trade names, and other intellectual property are the result of significant investment and worth billions of dollars.

16.     To protect its significant investment in the American Marks, American registers its trademarks with the U.S. Patent and Trademark Office ("USPTO") on the Principal Register, and registers its unique artwork, like the "Flight Symbol" with the U.S. Copyright Office. The "Flight Symbol" is the subject of U.S. Copyright registration No. VA0002130520. American also registers its trademarks in many other countries throughout the world.

17.     American's registered American Marks include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| AMERICAN AIRLINES | 4939082 | April 19, 2016 | (Int'l Class: 35) Sales promotion; promoting the goods and services of others by means of a loyalty program, discount program, |

6

and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel; online retail store services featuring gift cards and private club membership; promoting the goods and services of others by means of providing an on-line shopping mall with links to the retail web sites of others in the field of books, computers, software, office supplies, consumer electronics, music, sporting and recreational equipment, gifts, travel items, apparel, jewelry, health and beauty, toys, travel, home and garden-related items, and general retail merchandise.

(Int'l Class: 37)
Repair and maintenance of aircraft, vehicles, aircraft-related facilities, baggage-related facilities, and air travel-related facilities; refueling of aircraft and land vehicles; ground support services in the field of air transportation, namely, aircraft de-icing services, aircraft interior and exterior cleaning, and sanitation.

(Int'l Class: 39)
Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing air transportation reservation services for others, providing vehicle reservation services for others, providing cruise reservation services for others, and providing vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network; providing lounge facilities, namely, airport services featuring transit lounge facilities for passenger relaxation and also including shower facilities

(Int'l Class: 41)
Providing online electronic publications, namely, online magazines and online newsletters in the field of general interest; publication of magazines; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-books, tablets, video and online games, and children's programming, all by means of an inflight entertainment system; providing in-flight entertainment services, namely, providing passengers with entertainment services in the form of providing in-flight entertainment services, namely, providing movies, radio and radio programs, music, documentaries, music videos, news and information in the field of sports, live and recorded television programs, e-

7

| | | | |
|---|---|---|---|
| | | | books, tablets, video and online games, and children's programming, all by means of a personal computer or tablet.<br><br>(Int'l Class: 43)<br>Food and drink catering; providing food and beverage services in conjunction with providing facilities in the form of a private club for conducting business, meetings and conferences; providing conference room facilities, food and beverage lounge facilities, and amenities, namely, food, drink, catering, and restaurant; providing hotel reservation and coordination services for others by means of a global computer network; travel agency services, namely, making reservations and booking for temporary lodging; entertainment services, namely, providing a general purpose arena facility for sports, entertainment, trade shows, exhibitions and conventions. |
| AMERICAN AIRLINES | 5279167 | September 5, 2017 | (Int'l Class: 09)<br>Computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices, namely, software for tracking and redeeming loyalty program awards; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status<br><br>(Int'l Class 38) Providing internet access |
| AMERICAN AIRLINES | 5592865 | October 30, 2018 | (Int'l Class 36)<br>Issuance of credit cards through a licensee |
| AMERICAN AIRLINES | 5573314 | October 2, 2018 | (Int'l Class 25)<br>Clothing, namely, shirts, jackets, fleece tops, t-shirts, sweatshirts, pants, shorts, skirts, sweat pants, pajamas, socks, and coats; headwear<br><br>(Int'l Class 28)<br>Toys, namely, model airplanes; scale model vehicles; plush toys; toy building blocks for model airplane sets; dolls, and dolls' clothes; playing cards<br><br>(Int'l Class 36)<br>Banking; real estate affairs, namely, real estate lending services; aircraft financing; credit union services; financial services for credit union members, namely, financial transactions in the nature of bank transactions, credit card transactions, debit transactions and credit transactions, consumer and mortgage lending, securities brokerage, mortgage and loan insurance services, and brokerage services, namely, real estate brokerage and real estate lending services; issuance of credit cards through a licensee |

| Design Only | 4449061 | December 10, 2013 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation transportation reservation services by means of a global computer network; providing information in the field of travel by means of a global computer network |
| Design Only | 5559145 | September 11, 2018 | (Int'l Class: 39)<br>Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, vehicle reservation services for others, cruise reservation services for others and vacation reservation services in the nature of coordinating travel arrangements for individuals and groups; providing information in the field of travel; ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; airport ramp services; transporting aircraft at airport; providing aircraft parking and storage; aircraft towing; transportation services, namely, checking of baggage; airport services featuring transit lounge facilities for passengers; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, namely, providing priority boarding for customers, and access to airport lounge facilities; air passenger wheel-chair services at airport; leasing of aircraft; leasing of components of aircraft; leasing of aircraft engines; transporting of aircraft engines for others; airport services featuring transit lounge facilities for passengers |
| AA | 514292 | August 23, 1949 | (Int'l Class 39)<br>Air transport of passengers and freight |

18.    The trademark registrations for the American Marks are valid and subsisting. Copies of these are attached collectively as **Exhibit B**. A copy of the copyright registration information for the Flight Symbol is attached as **Exhibit C**.

19.    Over the past several decades, American has used the American Marks, both alone and in combinations with other words and designs, in connection with travel and transportation services, among numerous other goods and services, in interstate commerce.

9

20.     In addition to its registered rights, American has strong common-law rights in the American Marks by virtue of extensive use and promotion in commerce.

21.     The American Marks serve as unique and famous source identifiers for American's transportation services, travel agency service, and travel reservation services.

22.     American is also widely ranked as one of the best places to work. American was been ranked by Forbes in 2020 as one of the best employers for diversity. The Human Rights Campaign Foundation rated American as one of the best places to work for LGBTQ+ Equality and gave American a 100% score on its corporate equality index, for the years 2020-2022. American's goodwill is therefore associated with American's trademarks not only in the minds of consumers, but also in the minds of jobseekers.

23.     American also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

24.     American has extensively used its American Marks on its websites to promote jobs listings. Specifically, American uses the American Marks on its employment website at <jobs.aa.com>. Screenshots of this website are attached as **Exhibit D.**

## DEFENDANTS' WRONGFUL CONDUCT

25.     In email messages sent to job seekers, the Doe Defendants fraudulently hold themselves out as "George Wilson" or "Peter Harrington," the "Recruitment Director" for American Airlines, and possibly other names and titles as well, in the city where the job seeker is searching for a position. The fraudulent email messages purport to offer the victim a position with American and to officially invite the victim to attend a New Hire Orientation. The fraudulent email messages then tell the victim to fill out a New Hire Form that authorizes American to perform a Criminal History Background Check, which is required pursuant to Federal law (49 CFR

10

1544.229), and then pay a fee for the Criminal History Background Check. The email messages direct victims to access the New Hire Form at another domain, which then redirects victims to online forms created by the Doe Defendants on various online form websites including JotForm.com, CognitoForms.com, AidaForm.com, and Formstack.com. The form websites collect the victims' personal information. After victims complete the New Hire Form they are directed to a PayPal page where they are instructed to pay around $100 purportedly for a Criminal History Background Check.

26.     The email messages look like legitimate American email messages because the Doe Defendants use the term "American Airlines" repeatedly throughout the messages, and the messages are sent from email addresses that are based on domain names that are similar to or incorporate American's well known "American Airlines" and "AA" marks. The email addresses include

- george.wilson@flydiraa.com,
- george.wilson@directaase.com,
- george.wilson@aadirectee.com,
- george.wilson@aadirecthh.com,
- george.wilson@amairll.com,
- george.wilson@OneWorldAA.com,
- george.wilson@flyaaow.com,
- george.wilson@aaflydirect.com,
- george.wilson@skyaadi.com,
- peter.harrington@airdiroi.com,
- peter.harrington@flydirectaa.com,
- peter.harrington@directaaci.com,
- peter.harrington@oneworldaae.com,
- peter.harrington@oneaadire.com, and
- peter.harrington@onedirectaae.com.

The domain names that the email addresses used to send the fraudulent messages are based on redirect victims to the American webpage to create the appearance of legitimacy and to simulate the other domain names owned by American. The "from" name in the fraudulent email messages

is listed as "American Airlines"; the "American Airlines" trademark and Flight Symbol is prominently displayed in the fraudulent email messages; the signature block claims to be from the Recruitment Director of American Airlines; and the American Airlines" trademark and Flight Symbol appear again at the bottom of the fraudulent email messages under the signature block. The email signature block also includes a link to American's actual website.

27.     The links to the New Hire Form likewise use domain names that incorporate or are similar to American's "AA" mark, including aaflydd.com and aaapplyhh.com. These bogus domain names redirect victims to forms created by the Doe Defendants to collect personal information from jobseekers who believe they have been invited to a New Hire Orientation by American. Once redirected, the forms prompt the applicant to submit their name, email address, phone number, and date of birth. After victims submit the New Hire Form, they reach a PayPal form, used for collecting a "background check" or "fingerprinting" fee. Jobseekers think they are sending their personal information and payment to American, when in fact they are sending it to fraudsters who created the emails and forms. American never receives the information the jobseekers provide in the fraudulent forms or the payment submitted through PayPal.

28.     If the jobseekers who receive the fraudulent email messages do not complete the New Hire Form and pay for the background check promptly, Defendants also send text messages using sms short codes to the jobseekers urging them to do so.

29.     Defendants also include fake phone numbers in the fraudulent email messages to the jobseekers so if the jobseeker has questions about the email or job opportunity, they can call the number and Defendants will answer, pretend to represent American, and urge the jobseeker to complete the New Hire Form and pay for the background check.

30.     At least some of the victims of this scam have actually shown up for the fake New

Hire Orientation before realizing they have been scammed.

31.     On information and belief, the personal information these fraudsters collect from jobseekers can be used to commit other crimes and frauds, including but not limited to, gaining access to the jobseekers' social media accounts, bank accounts, credit history, and appropriating the jobseekers' identities for use in other crimes.

**COUNT I**
**FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**(15 U.S.C. § 1141(1))**

32.     American repeats and realleges each of the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33.     American owns valid federally registered trademarks for the American Marks, among others, for use in connection with goods and services in the airline industry.

34.     American's federally-registered trademarks are inherently distinctive, and continue to acquire further substantial distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of American's widespread and continuous use of the American Marks, the American Marks have become associated in the minds of the relevant purchasing public with American. The reputation and goodwill that American has built-up in its American Marks is of great value to American.

35.     American has prior rights in the American Marks in connection with travel reservation services in the United States.

36.     Defendants have adopted designations and designs that are identical to or substantially indistinguishable from the genuine American Marks in appearance, sound, meaning, and commercial impression, such that consumers would likely confuse the respective marks, or cause mistake or deception as to the origin, sponsorship or approval of, Defendants' websites

13

("Counterfeit American Marks"). Defendants' adoption of counterfeits of the American Marks includes, but is not limited to, the use of those marks in email message content and in domains and subdomains.

37.     Defendants have used the Counterfeit American Marks in commerce with the offering of employment for travel-related services in the United States without the approval or consent of American.

38.     Defendants' use of the Counterfeit American Marks without consent from American is willful and intentional infringement of American's federally registered marks.

39.     On information and belief, Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit American Marks.

40.     The goodwill of American's business is of great value, and American will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of American.

41.     Defendants' aforesaid acts have caused and, unless acts are restrained by this Court, will continue to cause great and irreparable injury to American.

42.     American has no adequate remedy at law.

43.     By virtue of its aforementioned acts, Defendants have violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

## COUNT II
## CYBERPIRACY (15 U.S.C. § 1125(d))

44.     American repeats and realleges each of the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

45.     Defendants have registered, used, and are using the following domain names: <aaflydd.com>,  <aaapplyhh.com>,  <flydiraa.com>,  <directaase.com>,  <aadirectee.com>,

14

<aadirecthh.com>, <amairll.com>, <OneWorldAA.com>, <aaworldwidedirect.com>, <flyaaow.com>, <aaflydirect.com>, <flyaaww.com>, <aairone.com>, <aaflyone.com>, <airdiroi.com>, <oneworldaae.com>, <oneworldaai.com>, <oneworldaav.com>, <oneaadire.com>, <aaesue.com>, <aalld.com>, <aallf.com>, <aaseria.com>, <aawsou.com>, <airdirio.com>, <amerairoo.com>, <ameriairee.com>, <ameriairss.com>, <amerieo.com>, <amerioe.com>, <appaadir.com>, <appdiraa.com>, <darssuo.com>, <directaace.com>, <directaaci.com>, <aaesuo.com>, <aaserie.com>, <airdiroi.com>, <ameriairuu.com>, <directaaco.com>, <suwour.com>, <aaflyhr.com>, <aairdir.com>, <skyaadi.com>, <flydirectaa.com>, <onedirectaae.com>, which are confusingly similar to the American Marks, to impersonate American and perpetrate fraud which constitutes a bad faith intent to profit from American's trademarks in violation of the Anticybersquatting Consumer Protection Act of 1999 codified at 15 U.S.C. § 1125(d).

46.    On information and belief Defendants provided materially false contact information to the domain name registrars used to register the fraudulent domain names.

47.    The American Marks were both famous and distinctive at the time the Fraudulent American Domains were registered.

48.    The Defendants have also caused and will continue to cause great and irreparable injury to American and, unless such acts are restrained by this Court, they will be continued and American will continue to suffer great and irreparable injury.

49.    American has no adequate remedy at law.

50.    By virtue of its aforementioned acts, Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

## COUNT III
## FEDERAL UNFAIR COMPETITION

## Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

51.     American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

52.     Defendants' actions, as described above, constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designates the origin of Defendants' services and related commercial activities as originating from or being approved by American, and thereby constitute a false description or representation used in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to American.

54.     American has no adequate remedy at law.

55.     By virtue of its aforementioned acts, Defendants' have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## FEDERAL TRADEMARK DILUTION
## Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c))

56.     American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

57.     The American Marks are famous and highly recognized by the general consuming public, and were famous and highly recognized by the general consuming public before Defendants' first use of its designation and before the actions complained of herein.

58.     Defendants' actions, as described above, dilute and are likely to continue to dilute the distinctiveness of the American Marks.

59.     On information and belief, Defendants engaged in the aforesaid acts with the intent

16

to trade on American's reputation or to cause dilution of the famous American Marks.

60.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to American.

61.    American has no adequate remedy at law.

62.    By virtue of its aforementioned acts, Defendants have violated the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

**COUNT V**
**FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

63.    American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

64.    American has a copyright registration for the American Airlines Flight Symbol, Reg. No. VA0002130520/2016-06-03.

65.    American's copyright is valid and enforceable.

66.    Defendants had access to American's copyrighted image because it was published on American's website and on other places on the Internet.

67.    Defendants have directly copied American's copyrighted image and displayed it in their fraudulent emails.

68.    In copying American's work, Defendants have violated the copyright laws of the United States, specifically 17 U.S.C. § 501, et seq.

69.    Defendants have knowingly and willfully infringed upon American's copyright.

70.    By reason and as a direct result of these acts of copyright infringement by Defendants, American has suffered great and irreparable damages, in an amount to be proved at trial.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

71.     American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

72.     The Florida Deceptive and Unfair Trade Practices ("FDUTPA"), Florida Statutes § 501.201 *et. seq.*, prohibits unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce.  American is a consumer within the meaning of the FDUTPA.

73.     Defendants' conduct is unethical, unconscionable, and deceptive in violation of FDUTPA.

74.     Defendants made misrepresentations regarding their relationship with American to jobseekers to purposefully mislead them to their detriment.

75.     Specifically, Defendants knew that use of the American Marks in their statements in emails and domains and subdomains relating to their relationship with American were false and/or misleading. Defendants' false advertising statements and omissions injure American as well as jobseekers.

76.     As a result of Defendants' actions, American has sustained, and will continue to sustain, harm to their valuable goodwill and reputation established in connection with the use and promotion of its American Marks, and other harm. On information and belief, jobseekers in Florida have also been harmed by virtue of being tricked into providing sensitive personal information and payment, which Defendants in turn have used or intend to use to compromise personal identities.

77.     Upon information and belief, Defendants' actions are willful, wanton, and/or in reckless disregard for the rights of American and jobseekers.

78.     Unless enjoined, Defendants' wrongful conduct will continue to cause great,

18

immediate, and irreparable injury to American and jobseekers.

79.     American is without an adequate remedy at law.

80.     By virtue of their aforementioned acts, Defendants have violated FDUTPA.

## COUNT VII
## FRAUD AND MISREPRESENTATION

81.     American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

82.     Defendants are orchestrating a fraudulent scheme to trick jobseekers into believing they are submitting a New Hire Form and payment for a Criminal Background Check in order to work at American. Florida recognizes a common law cause of action for fraud.

83.     Defendants falsely represent to jobseekers that they are American or working on behalf of American.

84.     Jobseekers reasonably rely on Defendants' false and misleading statements, omissions and deceptive conduct.

85.     The representations made by Defendants regarding their relationship with American are material, in that jobseekers would not provide personal sensitive information to Defendants if they had known that Defendants were not actually affiliated with American.

86.     As a direct and proximate cause of Defendants' intentional, wanton, willful and malicious misrepresentations, American and jobseekers have suffered damages in the amount to be proved at trial.

## COUNT VIII
## FLORIDA CIVIL CONSPIRACY

87.     American repeats and realleges each and every allegation of Paragraphs 1 through 31 above, as if fully set forth herein.

88.     Defendants are actively conspiring and combining with each other to accomplish some concerted criminal and unlawful purpose, and some otherwise lawful purpose through unlawful means, to wit: to misappropriate American's intellectual property, to defraud American's potential employees and members of the public seeking work, and cause substantial damage to American, and have committed one or more overt acts in furtherance of and in pursuit of the conspiracy and caused damage to American as a result of such actions.

89.     Defendants' email messages and forms are all created knowingly by Defendants, and in concert with each other, for the purpose of enriching themselves at American's (and their potential employees') expense.

90.     Defendants entered into this conspiracy knowingly and willfully.

91.     By reason and as a direct result of these acts of conspiracy and infringement by Defendants, American has suffered great and irreparable damages, in an amount to be proved at trial, but well in excess of $75,000 in violation of Florida's civil conspiracy law. The direct and proximate damage to American includes, but is not limited to, damage to American's intellectual property, damage to American's goodwill and reputation, damage to American's relationship with jobseekers who have been defrauded by Defendants, and expenses incurred by American putting a stop to Defendants' fraud. Such conduct as alleged herein constitutes common law conspiracy under Florida law.

## **PRAYER FOR RELIEF**

Plaintiff American prays for the following relief:

(A)    That this Court find that Defendants' have unlawfully, and without authorization, infringed upon the American Marks, engaged in cyberpiracy, engaged in unfair competition, and caused trademark dilution, all in violation of the Lanham Act, 15

U.S.C. § 1125, et seq.; infringed on American's registered copyrights in violation of 17 U.S.C. § 501; engaged in false advertising in violation of the FDUTPA; and engaged in conspiracy, and fraud and misrepresentation in violation of the common law of Florida.

(B)   That this Court order Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, by, through or under them be permanently enjoined from:

    (1)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks;

    (2)   using the American Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in any manner likely to cause others to believe that Defendants are associated with, sponsored by, or endorsed by American;

    (3)   passing off, inducing, or enabling others to pass off any services related to American which are not authorized by American;

    (4)   making any false or misleading statements regarding American or their services, or the relationship between American and Defendants;

    (5)   committing any other acts calculated to cause consumers or jobseekers to believe that Defendants are connected with American;

    (6)   engaging in any activity constituting unfair competition with American;

    (7)   engaging in any activity that is likely to dilute the distinctiveness of the American Marks;

    (8)   assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above subparagraphs (1) through (7);

*ACTIVE 65643592v7*

(C)   That this Court order Verisign, the domain name registry operator for the .com Top Level Domains effectuate transfer of the <aaflydd.com>, <aaapplyhh.com>, <flydiraa.com>, <directaase.com>, <aadirectee.com>, <aadirecthh.com>, <amairll.com>, <OneWorldAA.com>, <aaworldwidedirect.com>, <flyaaow.com>, <aaflydirect.com>, <flyaaww.com>, <aairone.com>, <aaflyone.com>, <airdiroi.com>, <oneworldaae.com>, <oneworldaai.com>, <oneworldaav.com>, <oneaadire.com>, <aaesue.com>, <aalld.com>, <aallf.com>, <aaseria.com>, <aawsou.com>, <airdirio.com>, <amerairoo.com>, <ameriairee.com>, <ameriairss.com>, <amerieo.com>, <amerioe.com>, <appaadir.com>, <appdiraa.com>, <darssuo.com>, <directaace.com>, <directaaci.com>, <aaesuo.com>, <aaserie.com>, <airdiroi.com>, <ameriairuu.com>, <directaaco.com>, <suwour.com>, <aaflyhr.com>, <aairdir.com>, <onsuoi.com>, <skyaadi.com>, <flydirectaa.com>, <onedirectaae.com> domain names to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C) by changing the registrar of record in the authoritative .com registry database from the current registrar to a registrar designated by Plaintiff.

(D)   Monetary relief in an amount to be fixed by the Court in its discretion as just, including:

   (1)   All of Defendants' profits gained from Defendants' misappropriation of personal information obtained by Defendants from jobseekers attempting to submit the New Hire Form and payment for the Criminal Background Check;

   (2)   Statutory damages, as provided in 15 U.S.C. § 1117(c) and (d), and 17 U.S.C. § 504(c).

   (3)   All damages sustained by American as a result of Defendants' acts of trademark infringement, unfair competition, trademark dilution, and fraud including but not

22

limited to ascertainable damages, costs, and attorney fees, including punitive damages;

(E)   All other further relief as this Court may deem just and proper.

American requests a trial by jury as to all issues triable to a jury.

Respectfully submitted,

Dated: July 8, 2022                          AMERICAN AIRLINES, INC.

By:          /s/ Benjamin G. Greenberg
             Benjamin Greenberg
             Stephanie Peral
             Greenberg Traurig, P.A.
             333 SE 2nd Ave.
             Miami, FL 33131
             Telephone: (305) 579-0860
             greenbergb@gtlaw.com
             perals@gtlaw.com

             Cameron M. Nelson (*Pro Hac Vice* to be filed)
             Marc Trachtenberg (*Pro Hac Vice* to be filed)
             Greenberg Traurig, LLP
             77 West Wacker Drive, Suite 3100
             Chicago, IL 60601
             Telephone: (312) 456-8400
             nelsonc@gtlaw.com
             trachtenbergm@gtlaw.com

             Nathan J. Muyskens (*Pro Hac Vice* to be filed)
             Greenberg Traurig, LLP
             2101 L St. NW, Suite 1000
             Washington, DC 20037
             Telephone: (202) 331-3100
             muyskensn@gtlaw.com

             David G. Barger (*Pro Hac Vice* to be filed)
             Greenberg Traurig, LLP
             1750 Tysons Boulevard
             Suite 1000
             McLean, VA 22102

*ACTIVE 65643592v7*

bargerd@gtlaw.com

Counsel for Plaintiff AMERICAN AIRLINES,
INC.

*ACTIVE 65643592v7*