UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22080-Civ-Williams/Sanchez

AMERICAN AIRLINES, INC.,

    Plaintiff,

v.

The Individuals and Entities associated with
The domains and email addresses identified
in **Exhibit A**,

    Defendants.
_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

This matter is before the Court on American Airlines, Inc.'s ("American") Motion for Entry of Default Judgment Against Defendants. ECF No. 39. The Honorable Kathleen M. Williams, United States District Judge, referred this matter to the undersigned for a Report and Recommendation. ECF No. 40. The Defendants[1] did not file a response to the Complaint or to the motion for default judgment and the deadlines to do so have long passed. After careful consideration of American's filings, the record, and the applicable law, and for the reasons discussed below, the undersigned **RESPECTFULLY RECOMMENDS** that American's Motion for Entry of Default Judgment be **GRANTED IN PART AND DENIED IN PART**.

---

[1] The Defendants are listed in Exhibit A to the Complaint and the motion for default judgment, which list the domains and email addresses connected to the unidentified individuals and/or entities against which American seeks default judgment. ECF Nos. 1-1, 39-1.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

American is the largest air carrier in the world and the third largest private employer in Miami-Dade County. American is also the registered owner of the "AA," "American Airlines," and the "Flight Symbol" trademarks and service marks (Reg. Nos. 4939082, 5279167, 5592865, 5573314, 4449061, 5559145, 514292), which are valid and registered on the Principal Register of the United States Patent and Trademark Office (hereinafter the "American Marks"). American has also registered the "Flight Symbol" with the United States Copyright Office.

The Defendants carried out a scheme to defraud jobseekers in which they sent out emails holding themselves out as Recruitment Directors for American, used counterfeits of the American Marks, used unauthorized copies of American's copyrighted images, and used other images and text identifying Defendants as part of American. The Defendants, however, are not authorized or licensed to use the American Marks.

Specifically, the email addresses the Defendants used to contact jobseekers included domain names confusingly similar to American's domain name, incorporated the American Marks, and redirected the jobseekers to American's official website. Furthermore, the sender of the emails is identified in the emails as "American Airlines," not as the Defendants; the body of the emails repeatedly displays the American Marks; and the signature block of the emails includes a link to American's official website.

In those emails, the Defendants purport to offer the jobseekers employment with American, direct jobseekers to complete a job application ("New Hire Form") that authorizes American to

---

[2] The following facts are admitted as a result of the Defendants' default. The factual background is derived from American's Complaint, ECF No. 1; American's Motion for Entry of Default Judgment Against Defendants, ECF No. 39; and supporting evidentiary submissions, especially the Declaration of Cameron M. Nelson, ECF No. 6, and its associated exhibits, ECF Nos. 6-1 through 6-3.

perform a criminal history background check, which is required pursuant to Federal law (49 C.F.R. § 1544.229), and direct the jobseekers to pay a fee of approximately $100.00 for the criminal background check or for fingerprinting.  The email messages redirect the jobseekers to separate domains, created by the Defendants, which collect the jobseekers' personal data and information.  Once redirected, the jobseekers are prompted to submit their names, email addresses, phone numbers, and dates of birth.  After submitting this information as part of the New Hire Form, the jobseekers reach a PayPal form used to collect the background check or fingerprinting fee.  The links to the New Hire Form, like the emails, use domain names that incorporate or are confusingly similar to the American Marks.  Unbeknownst to the jobseekers, the Defendants, not American, received their personal information and funds.

If jobseekers do not complete the New Hire Form and pay the background check or fingerprinting fee promptly, the Defendants send them text messages using SMS short codes urging the jobseekers to do so.  The Defendants also include fake phone numbers in the fraudulent email massages so that if the jobseekers have a question about the job opportunity, they can call a fake phone number which the Defendants would answer pretending to represent American and urging the jobseekers to complete the New Hire Form and pay the background check or fingerprinting fee.

As a result of these circumstances, on July 8, 2022, American filed its Complaint, ECF No. 1, its Motion for an Order to Seal and Memorandum of Law in Support Thereof, ECF No. 3, and its *Ex Parte* Application for Seizure Order, Temporary Restraining Order, Order to Show Cause for a Preliminary Injunction, Order for Expedited Discovery, Order Restraining Assts and Order to Seal ("Application for *Ex Parte* Relief"), ECF No. 4.  On July 22, 2022, the Court granted American's Motion to File Under Seal, ECF No. 10, and American's *Ex Parte* Application for

Seizure Order, Temporary Restraining Order, Order to Show Cause for a Preliminary Injunction, Order for Expedited Discovery, and Order Restraining Assets ("Order on Application for *Ex Parte* Relief"), ECF No. 12.  On August 19, 2022, the Court signed an Order Issuing Preliminary Injunction.  ECF No. 27.

In the Order on Application for *Ex Parte* Relief, the Court instructed American to:

> serve the Complaint, the Application for *Ex Parte* Relief, and this Order on each Defendant either via their corresponding email address, via the email/online contact form or other means of electronic contact provided on the Fraudulent Domain; by providing a copy of this Order by email to the registrar of record for each of the Fraudulent Domain so that the registrar, in turn, notifies each Defendant of the Order; or by other means reasonably calculated to give notice that is permitted by the Court.

ECF No. 12 at 19.  On February 9, 2023, American filed the Declaration of Cameron M. Nelson as proof of service on the Defendants in compliance with the Court's Order on Application for *Ex Parte* Relief.  ECF No. 32.

Subsequently, on April 7, 2023, a Clerk's Entry of Default was entered, ECF No. 34, as directed by the Court, ECF No. 33.  To date, the Defendants have not answered or otherwise responded to the Complaint.  American now moves the Court for an entry of default judgment against the Defendants.  ECF No. 39.

## II.    LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1258 (S.D. Fla. 2016).  A Clerk's entry of default, however, does not automatically entitle a plaintiff to a default judgment.  *See Cohan v. Baby Marathon, LLC*, No. 20-60185-Civ, 2020 WL 6731041, at *1 (S.D. Fla. Oct. 27, 2020) (explaining that a motion for default judgment "is not granted as a matter of right").  While it is true that a

4

defendant who defaults admits the well-pleaded allegations of fact in the complaint, a defaulting defendant does not admit any facts that are pleaded insufficiently or are mere conclusions of law. *Id.* at *1; *see also, e.g.*, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (explaining that the pleading standard enumerated in *Iqbal* "is equally applicable to a motion for default judgment") (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Accordingly, an admission of the allegations in the complaint, by itself, may or may not be sufficient to grant default judgment. *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("[T]he defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief."); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

To adequately state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Once liability is established, the Court must also assess the form of relief. *See Chanel, Inc. v. French*, No. 05-61838-Civ, 2006 WL 3826780, at *2 (S.D. Fla. Dec. 27, 2006). Remedies for trademark infringement include injunctive relief. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019).

### III. LIABILITY

American filed an eight-count complaint against the Defendants. *See* ECF No. 1. In that complaint, American has asserted claims of federal trademark counterfeiting and infringement, pursuant to 15 U.S.C. § 1114 (Count I); cyberpiracy, pursuant to 15 U.S.C § 1125(d) (Count II); federal unfair competition, pursuant to 15 U.S.C. § 1125(a) (Count III); federal trademark dilution, pursuant to 15 U.S.C § 1125(c) (Count IV); federal copyright infringement, pursuant to 17 U.S.C

§ 501(c) (Count V); common law deceptive and unfair trade practices, pursuant to the Florida Deceptive and Unfair Trade Practice Act, Florida Statutes § 501.201 *et. seq*. (Count VI); common law fraud and misrepresentation (Count VII); and common law civil conspiracy (Count VIII). ECF No. 1. The sufficiency of American's claims is addresses below.

1. *Federal Trademark Counterfeiting and Infringement*

In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, American must demonstrate that "(1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two." *See Yves Saint Laurent S.A.S. v. Individuals, Bus. Entities & Unincorporated Associations Identified in Schedule "A,"* No. 23-CV-61028-Bloom/Otazo-Reyes, 2023 WL 5457097, at *3 (S.D. Fla. Aug. 24, 2023) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

American satisfied the first element of a trademark infringement claim because it alleges that it had prior rights to the American Marks. ECF No. 1 at ¶ 35. As to the second element, American alleges that "Defendants have adopted designations and designs that are identical to or substantially indistinguishable from the genuine American Marks in appearance, sound, meaning, and commercial impressions, such that consumers would likely confuse the respective marks, or cause mistake or deception as to the origin, sponsorship or approval of, [sic] Defendants' websites." *Id.* at ¶ 36. American further alleges that the Defendants used the American Marks "in commerce with the offering of employment from travel-related services in the United States without the approval or consent of American." *Id.* at ¶ 37. Additionally, the declaration of Cameron M. Nelson and the exhibits attached to the declaration provide direct support for American's allegations that the Defendants used counterfeit American Marks in their emails to

jobseekers offering them employment with American. *See generally* ECF Nos. 6-1 through 6-3. American has adequately stated a cause of action for federal trademark counterfeiting and infringement, and it is thus entitled to default judgment as to Count I.

2. *Cyberpiracy*

For the Court to impose liability on the Defendants for cyberpiracy, American must demonstrate that the Defendants "registered the domain name, that the domain name was identical or confusingly similar to American's trademark that was distinctive at the time of registration, and that the domain name was registered in bad faith." *See Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778 (11th Cir. 2015) (citing 15 U.S.C. § 1125(d)). Trademark law recognizes "four gradations of distinctiveness of marks" including, *inter alia*, descriptive marks. *See id.* (quoting *Welding Servs. Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)).

> A descriptive mark "can acquire distinctiveness or 'secondary meaning' by becoming associated with the proprietor's product or service. . . . A proprietor can make a prima facie showing of 'secondary meaning' by showing that the name has been used in connection with the proprietor's goods or service continuously and substantially exclusively for five years."

*Jysk Bed'N Linen*, 810 F.3d at 778-79 (quoting *Welding Servs. Inc.*, 509 F.3d at 1357)). In determining whether the Defendants registered the domain names in bad faith, the statute provides nine factors that a Court may consider in making that determination. *See generally* 15 U.S.C. § 1125(d)(1)(B)(i). One of those factors is "[w]hether the Defendant provides 'material and misleading false contact information when applying for the registration of the domain name' or the defendant 'intentional[ly] fail[s] to maintain accurate contact information.'" *Jysk Bed'N Linen*, 810 F.3d at 776 (quoting 15 U.S.C. § 1125(d)(1)(B)(i)).

Here, American alleges that the Defendants registered forty-six domains that are confusingly similar to the American Marks. ECF No. 1 at ¶ 45. American further alleges that the

7

American Marks are both famous and distinctive. *See id.* at ¶¶ 15, 47. Lastly, American alleges that the Defendants registered the domain names "to impersonate American and perpetrate fraud" with a "bad faith intent to profit from American's trademarks," *id.* at ¶ 45, and that the "Defendants provided materially false contact information to the domain name registrars used to register the fraudulent domain names," *id.* at ¶ 46. Because of their default, the Defendants admitted these allegations.

Moreover, American established the distinctiveness of the American Marks because, *inter alia*, it has been using those marks for more than five years, thus acquiring secondary meaning. *See* ECF No. 1 at ¶ 17. For example, the "AA" mark, which is the mark most commonly used in the Defendants' domains, *see* ECF Nos. 6-1 through 6-3, has been used by American since August 23, 1949, ECF No. 1 at ¶ 17; ECF No. 1-2 at 2-3. American is thus entitled to default judgment as to Count II.

3. *Federal Unfair Competition*

To establish the Defendants' liability for unfair competition under 15 U.S.C. § 1125(a), American must show "(1) that it had prior rights to the mark at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers were likely to confuse the two." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). Indeed, "[t]he elements of a federal unfair competition claim when infringement is alleged, are the same as the elements for trademark infringement." *Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-Civ-Williams/Reid, 2023 WL 3980245, *3 (S.D. Fla May 19, 2023) (citing *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994)). Because American pled sufficient facts in the complaint to prevail on its trademark infringement claim under 15 U.S.C. § 1114(a)(1), those facts are also sufficient

to prevail on its unfair competition claim under 15 U.S.C. § 1125(a).  *See Green Apple Juice Bar*, 2023 WL 3980245, at *3; *see also Babbit Elecs., Inc.*, 38 F.3d at 1181.  American is thus entitled to default judgement as to Count III.

   4.  *Federal Trademark Dilution*

To state a claim for trademark dilution, American must allege that "1) its mark is famous, 2) the defendant adopted its mark after the plaintiff's mark became famous, 3) the defendant's mark diluted the plaintiff's mark, and 4) the defendant's use is commercial and in commerce." *Total Compliance Network, Inc. v. Total Compliance Services, LLC*, No. 17-21038-CV-Williams/Torres, 2018 WL 4426065, *3 (S.D. Fla. Jun. 8, 2018) (quotations omitted).

American holds valid registrations for the American Marks, ECF No. 1-3; 1-4, which it has used for several decades, ECF No. 1 at ¶¶ 15, 19, and which it uses on its employment websites to promote job listings, ECF No. 1 at ¶ 24.  American alleges that the American Marks "were famous and highly recognized by the general consuming public before Defendants' first use." *Id.* at ¶ 57.  American also alleges that the "Defendants' actions . . . dilute and are likely to continue to dilute the distinctiveness of the American Marks." *Id.* at ¶ 58.  Specifically, the Defendants diluted the American Marks by sending jobseekers fraudulent emails purporting to be Recruitment Directors for American and using counterfeits of the American Marks, without American's authorization. *Id.* at ¶¶ 25-26.  Lastly, the Defendants used the American Marks in commerce when they fraudulently urged jobseekers to promptly submit payment for a background check with the intention of profiting from those payments.  ECF No. 1 ¶¶ 27-28.  Hence, American has pled sufficient facts in its complaint to prevail on its federal trademark dilution claim, and it is thus entitled to default judgment as to Count IV.

5. *Federal Copyright Infringement*

"Liability for copyright infringement arises when a plaintiff can prove (1) ownership of a copyright, and (2) a defendant's copying of the copyrighted work." *XYZ Corp. v. Individuals, Partnerships &Unincorporated Associations Identified on Schedule "A,"* 668 F. Supp. 3d 1268, 1274 (S.D. Fla. 2023) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

A plaintiff satisfies the first prong of the copyright infringement test when it produces a certificate of registration that confirms the plaintiff's ownership of the copyright. *See XYZ Corp.*, 668 F. Supp. 3d at 1274; *see also* 17 U.S.C § 410(c) (providing that a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate"). To satisfy the second prong, a plaintiff must establish: (1) that the defendant copied the plaintiff's work as a factual matter; and (2) that there is substantial similarity between the allegedly infringing work and the copyrighted work that is legally protected. *See XYZ Corp.*, 668 F. Supp. 3d at 1274-75 (citing *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010)).

Here, American alleges that it "has a copyright registration for the American Airlines Flight Symbol, Reg. No. VA002130520/2016-06-03." ECF No. 1 at ¶ 64. This symbol has been registered with the United States Copyright Office for over five years and is protected from infringement under federal copyright law. ECF No. 1-4. American further alleges that the Defendants "directly copied American's copyrighted image and displayed itin [sic] their fraudulent emails." ECF No. 1 at ¶ 67. Indeed, the Defendants displayed American's copyrighted "Flight Symbol" in numerous email messages sent to jobseekers. *See* ECF No. 1 at ¶ 26; ECF Nos. 6-1 at 8-9; 6-2 at 2-3, 5-6, 12-13, 15-16.

American has stated a claim for federal copyright infringement, and it is thus entitled to

10

default judgment as to Count V.

6. *Florida Deceptive and Unfair Trade Practices Act (FDUTPA)*

"To sustain a FDUTPA claim, a plaintiff must show '(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.'" *Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1299 (S.D. Fla. 2022) (quoting *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)). The Eleventh Circuit has determined that a deceptive practice occurs when there is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Zlotnick*, 480 F.3d at 1284 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).

Here, American alleges that "Defendants made misrepresentations regarding their relationship with American to jobseekers to purposefully mislead them to their detriment." ECF No. 1 at ¶ 74. American further alleges that "[a]s a result of Defendants' actions, American has sustained, and will continue to sustain, harm to their valuable goodwill and reputation established in connection with the use and promotion of its American Marks, and other harm." *Id.* at ¶ 76. Finally, American alleges that "[u]nless enjoined, Defendants' wrongful conduct will continue to cause great, immediate, and irreparable injury to American and jobseekers." *Id.* at ¶ 78.

Because American has established the Defendants' liability for trademark infringement, *see supra*, and has also separately pled sufficient facts to establish the Defendants' liability under FDUTPA for engaging in deceptive acts that have caused American to suffer damages, including

11

to the goodwill and reputation that American has established in connection with the American Marks, American is entitled to default judgment on its FDUTPA claim. *See Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1283 (S.D. Fla. 2012) ("A successful infringement claim supports a claim for violation of FDUTPA.") (citing *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (". . . [plaintiffs] claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its trademark infringement and false advertising claims.")).

   7. *Fraud and Misrepresentation*

"To make a claim for fraudulent misrepresentation under Florida law, a plaintiff must allege: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Godelia v. Doe 1*, 881 F.3d 1309, 1321 (11th Cir. 2018) (quoting *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)). Significantly, it is the plaintiff, not a third-party, that must rely on and suffer damages as a result of the defendant's fraudulent misrepresentation. *See First Interstate Dev. Corp. v. Ablanedo*, 511 So.2d 536, 539 (Fla. 1987) ("[T]o prove fraud, a plaintiff must establish . . . deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff."); *see also Poliakoff v. Nat'l Emblem Ins. Co.*, 249 So.2d 477, 478 (Fla. 3d DCA 1971) (holding that the elements of a fraud claim include "action by the plaintiff in reliance on the correctness of the [defendant's] representation" and "resulting damage to the plaintiff").

Here, American alleges that the Defendants made fraudulent misrepresentations to jobseekers, that jobseekers reasonably relied on those fraudulent misrepresentations, and that the jobseekers' reliance resulted in damages. ECF No. 1 at ¶¶ 82-86. American does not allege,

12

however, that the Defendants' fraudulent misrepresentations were directed to American, nor that American acted on or reasonably relied on those fraudulent misrepresentations to its detriment, as required by Florida law. In addition, American does not cite to any authority showing that it can sustain a claim as a third-party which did not detrimentally rely on to the Defendants' fraudulent misrepresentations and to which the fraudulent misrepresentations were not directed. Accordingly, American has failed to state a claim for fraudulent misrepresentation, and it is thus not entitled to default judgment as to Count VII.

8. *Florida Civil Conspiracy*

"[T]o state a claim for civil conspiracy, [American] must allege: '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 998 So.2d 1157, 1159-60 (Fla. 3d DCA 2008)).

American alleges that the "Defendants are conspiring and combining with each other . . . to accomplish some concerted criminal and unlawful purpose, and some otherwise lawful purpose through unlawful means, to wit: to misappropriate American's intellectual property, [and] to defraud American's potential employees and members of the public seeking work." ECF No. 1 at ¶ 88. American further alleges that the Defendants "have committed one or more overt acts in furtherance of and in pursuit of the conspiracy." *Id.* The complaint sets forth facts establishing the commission of such overt acts, ECF No. 1 at ¶¶ 25-29, and the email messages attached to the declaration of Cameron M. Nelson demonstrate that the Defendants indeed committed numerous overt acts in furtherance of their conspiracy to defraud jobseekers, *see* ECF Nos. 6-1, 6-2, 6-3.

13

American alleges that these emails messages were "created knowingly by Defendants, and in concert with each other." ECF No. 1 at ¶ 89. Lastly, American alleges that "as a direct result of these acts of conspiracy and infringement by Defendants, American has suffered great and irreparable damages . . . well in excess of $75,000" and that "[t]he direct and proximate damage to American includes, but is not limited to, damage to American's intellectual property, damage to American's goodwill and reputation, damage to American's relationship with jobseekers who have been defrauded by Defendants, and expenses incurred by American putting a stop to Defendants' fraud." *Id.* at ¶ 91. Accordingly, American has adequately stated a claim for civil conspiracy and is entitled to a default judgment as to Count VIII.

### IV.  RELIEF

Because American has established the Defendants' liability as to all but one of the causes of action alleged in the complaint, as discussed above, the Court must next determine whether American is entitled to relief. In its motion for default judgment, American requests the entry of a permanent injunction against the Defendants, an award of statutory damages, and an order directing PayPal to turn over the funds frozen at the outset of this litigation to American.

1. *Permanent Injunction*

Under the Lanham Act, a court is permitted to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available even in the default judgment setting. *See PetMed*

*Express*, 336 F. Supp. 2d at 1222-23.  The copyright laws also permit a court to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *see also Betty's Best, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule 'A,'* No. 23-CV-22322-KMW, 2023 WL 6171566, at *3 (S.D. Fla. Sept. 21, 2023) (concluding that "both the Copyright Act and the Patent Act permit the entry of an injunction to restrain violations of those acts").

Permanent injunction is appropriate where a plaintiff demonstrates that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship between the parties favors an equitable remedy; and (4) the issuance of an injunction is in the public interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).  American has met its burden on each of the four factors, and thus it is entitled to a permanent injunction against the Defendants.

In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985)); *see also Levi Strauss v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (concluding, where there was "no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales," that such infringement was irreparable harm by its nature). Here, American established that it has suffered and could continue to suffer irreparable harm based on the Defendants' sending of emails to jobseekers in which the Defendants purport to be American and use counterfeit marks that are nearly identical to the American Marks in the Defendants' fraudulent email messages.  Those actions cause consumers and jobseekers to confuse

the Defendants' counterfeit marks with the American Marks and to mistake the fraudsters for American, causing damage to American.

American has no adequate remedy at law in the event that the Defendants continue to use the counterfeit American Marks and display them in fraudulent emails sent to jobseekers. Indeed, the Defendants retain the ability to create infringing domain names and use them to send fraudulent emails to jobseekers as the Defendants impersonate American. Should the Defendants continue their infringing and counterfeiting behavior, an award of monetary damages alone would not remedy the injury to American's reputation and goodwill as an air carrier and employer. Moreover, American faces hardship as a result of the Defendants' infringement because it is unable to control its reputation in the marketplace. The Defendants, on the other hand, will face no hardship if they are prohibited from infringing on American's copyrights and trademarks. *See Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-Civ-Lenard/Goodman, 2016 WL 8679081, at *6 (S.D. Fla. Nov. 3, 2016) ("It is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product.") (quotation omitted). Lastly, it is in the public interest to issue a permanent injunction against the Defendants to prevent consumers from being defrauded and misled by the Defendants' fraudulent use of emails and counterfeit marks. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) (citing *Nike, Inc. v. Leslie*, No. 85-960 Civ-T-15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.")). Thus, the undersigned recommends that the Court grant American's request for a permanent injunction.

2. *Statutory Damages*

American also seeks statutory damages as to its trademark counterfeiting claim, pursuant to 15 U.S.C. § 1117(c). In cases involving the use of a counterfeit mark, the Lanham Act provides that "a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good." *Yves Saint Laurent S.A.S.*, 2023 WL 5457097, at *5 (citing 15 U.S.C. § 1117(c)(1)). If the court finds that a defendant's "counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good." *Id.* (citing 15 U.S.C. § 1117(c)(2)). Statutory damages under the Lanham Act are "particularly appropriate in the default judgment context" because it is difficult to ascertain the defendants' profits and because the defendants have not participated in the litigation. *See CreeLED, Inc. v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A,"* No. 22-CV-23683-JEM/Becerra, 2023 WL 6130593, at *4 (S.D. Fla. Sept. 11, 2023) (citing *Tiffany*, 2016 WL 8679081, at *7)). Courts have wide discretion in determining the amount of statutory damages awarded to a plaintiff, and such damages may be awarded despite a plaintiff's inability to prove it suffered actual damages as a result of the defendant's infringement. *See CreeLED*, 2023 WL 6130593, at *4 (citing *Louis Vuitton Malletier v. aaaimitationbags.com*, No. 18-62354-Civ-Altonaga/Seltzer, 2019 WL 2008910, at *5 (S.D. Fla. March 29, 2019)). An award of statutory damages pursuant to 15 U.S.C. § 1117(c) is "intended not just for compensation for losses, but also to deter wrongful conduct." *See CreeLED*, 2023 WL 6130593, at *4 (citing *PetMed Express*, 336 F. Supp. 2d at 1220-21)).

Here, American alleges that the Defendants sent fraudulent email messages to jobseekers falsely representing to be recruitment directors for American and offering the jobseekers

17

employment with American. ECF No. 1 at ¶ 25. American further alleges that the Defendants "adopted designations and designs that are identical to or substantially indistinguishable from the genuine American Marks in appearance, sound, meaning, and commercial impression" in the domains and subdomains used to the send the emails and in the content of the emails, "such that consumers would likely confuse the respective marks, or cause mistake or deception as to the origin. *Id.* at ¶ 36. American also alleges that the Defendants "used the Counterfeit American Marks in commerce with the offering of employment for travel-related services in the United States without approval or consent of American." *Id.* at ¶ 37. American alleges that the Defendants' use of the counterfeit American Marks is a "willful and intentional infringement of American's federally registered marks." *Id.* at ¶ 38. The Court may infer that the Defendants willfully counterfeited the AA Marks both from the alleged facts and because the Defendants defaulted on American's willfulness allegations. *See Louis Vuitton Malletier v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule A*, No. 22-CV-60177-Williams/Valle, 2022 WL 17083845, at *7 (S.D. Fla. Nov. 3, 2022) ("Willfulness may also be inferred from the defendant's default.") (citing *PetMed Express*, 336 F. Supp. 2d at 1217; *Arista Records, Inc. v. Becker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)).

Based on American's well-pled allegations, establishing the Defendants' liability, "the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure that Defendants do no continue their intentional and willful counterfeiting activities." *See Yves Saint Laurent S.A.S.*, 2023 WL 5457097, at *6. Here, American requests that the Court awards "$6 million in statutory damages against each defendant entity, which reflects the maximum statutory damages available for three (3) trademarks – AA, American Airlines, and the 'Flight Symbol.'" ECF No. 39 at 16. Indeed, American has

demonstrated that it qualifies for statutory damages of up to $2,000,000.00 per mark due to the Defendants' willful infringement on the American Marks. Given the circumstances that have been established, however, an award of $6,000,000.00 appears excessive and unnecessary to deter continuing infringement of the American Marks. Considering the evidence in this case and the goal of deterrence, the undersigned recommends an award of $1,000,000.00 for each of the three marks, as to each Defendant. The undersigned finds that this $3,000,000.00 award of statutory damages is just under the circumstances and "should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants—all stated goals of 15 U.S.C. section 1117(c)." *Louis Vuitton Malletier v. aaaimitationbags.com*, 2019 WL 2008910, at *6.

3. *Transfer of Frozen Funds*

American devotes two sentences in its motion for default judgment to its request that the Court order PayPal to turn over to American the funds that were frozen earlier in this case. *See* ECF No. 39 at 18. American, however, provides no authority or explanation for why those funds, at least some, if not all, of which appear to have been funds that the Defendants obtained from the jobseekers that they defrauded, should be turned over to American at this stage of the proceedings. It may well be that it is an appropriate equitable remedy under the circumstances to utilize the Defendants' ill-gotten gains to remedy American's injuries and partially satisfy a default judgment obtained by American against the Defendants, *see, e.g.*, *Louis Vuitton Malletier v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule A*, Case No. 22-CV-60177-Williams, ECF No. 46 at 6 (S.D. Fla. Nov. 21, 2022) (Final Default Judgment and Permanent Injunction), but, at least at this point, American has not established to the undersigned's satisfaction that it is an appropriate remedy given that defrauded jobseekers might also have

potential claims to those funds. Nevertheless, at a minimum, those funds should remain frozen until such time as the legal, equitable, and procedural availability of the funds to satisfy American's judgment against the Defendants can be determined.

## V. CONCLUSION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that American's Motion for Entry of Default Judgment Against Defendants (ECF No. 39) be **GRANTED IN PART AND DENIED IN PART**.

Within fourteen (14) days of the date of this Report and Recommendation, that is, by March 1, 2024, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in chambers in Miami, Florida, this 16th day of February 2024.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Kathleen M. Williams
      Counsel of Record